NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE THE APPLICATION OF KATE O'KEEFFE FOR ASSISTANCE BEFORE A FOREIGN TRIBUNAL | Civil Action No. 14-5835 (WJM)<br><br>OPINION |

**Falk, U.S.M.J.**

This is a miscellaneous action before the Court by way of a motion to quash a subpoena. [ECF No. 17.]

On September 19, 2014, Ms. Kate O'Keeffe, a Hong Kong-based reporter who is employed by Dow Jones & Company, Inc. to write for the *Wall Street Journal*, the *Wall Street Journal Asia*, and the *Wall Street Journal Europe*, filed an *ex-parte* application, pursuant to 28 U.S.C. § 1782 and Federal Rule of Civil Procedure 45, for the issuance of a subpoena to be served in New Jersey in aid of her defense of a lawsuit pending in Hong Kong. [ECF No. 1.]

The underlying Hong Kong lawsuit is a libel action filed by Mr. Sheldon G. Adelson, alleging that an article authored by O'Keeffe and published in U.S., European, and Asian editions of the *Wall Street Journal* falsely referred to him as "foul-mouthed."[1] Mr. Adelson was described by his counsel as the Chairman of the Board of Las Vegas Sands Corporation ("LVSC") and Sands China Ltd., two of the largest gaming companies in the world. The parties

---

[1] This background is drawn from the parties' submissions.

disagree how "foul-mouthed" should be defined, but in the Hong Kong proceedings, Mr. Adelson has apparently defined "foul-mouthed" as meaning that he used language that was "obscene, profane, or scurrilous"; "abusive, blasphemous, coarse and offensive"; and or "rude and lewd."

On September 30, 2014, the Court granted Ms. O'Keeffe's *ex-parte* request to serve a subpoena seeking a deposition and documents from Kirk A. Thorell, who is a partner in PricewaterhouseCoopers' ("PwC") Florham Park, New Jersey office. [ECF No. 6.] PwC was, for twenty-five years, until April 2013, the auditor for Mr. Adelson's United States-based company LVSC. The *Wall Street Journal* had previously reported that "personal tension" between Adelson and PwC played a role in PwC's decision to resign as LVSC's auditor, as did Adelson's "challenging demeanor and demands on the auditors." It is O'Keeffe's position that Mr. Thorell has or may have information and/or documents that would support the notion that Mr. Adelson is "foul-mouthed."

In the Order granting the *ex-parte* request, it was made clear that the motion was being conditionally granted, and that Mr. Thorell and/or Mr. Adelson were authorized to file a motion to quash. [Id.] On November 11, 2014, Mr. Adelson and LVSC (collectively "Movants") filed the present motion. [ECF No. 17.] Mr. Thorell has not filed any papers.

Full and comprehensive briefs have been submitted, together with declarations from experts on foreign law and an authorized sur-reply. Oral argument was held on February 5, 2015. Movants' position can be summarized as objecting to the subpoena as an attempt to circumvent Hong Kong's procedural and substantive rules, as burdensome, and as encroaching on the confidentiality of auditor-client communications. Movants also contend the subpoena is a "fishing expedition." Applicant's opposition contends that all of the requirements of the relevant

2

statute and Supreme Court authority are satisfied and that the information is relevant to her defense in Hong Kong.[2]  For the reasons stated below, the motion to quash is **DENIED**.

## DISCUSSION

A.  **Legal Standard**

Section 1782 is the "product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004).  The statute provides in relevant part:

> (a) **the district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation**. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a) (emphasis added).

"Congress enacted 1782 to further the following goals: facilitating the conduct of litigation in foreign tribunals, improving international cooperation in litigation, and putting the

---

[2] The parties' papers reveal that Ms. O'Keeffe has also sought to serve subpoenas on LVSC and other individuals out of the District of Nevada, again pursuant to Section 1782. See Civ. A. No. 14-1518 (RBF)-(CWH) (D. Nev.).  Briefing in that matter is ongoing and closely tracks that of this case.

United States into the leadership position among world nations." Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999) (internal citations omitted). "However, these goals do not in turn mean that a party to foreign litigation is entitled to unbridled and unlimited discovery under the statue." Id. "Section 1782 vests district courts with discretion to grant, limit or deny discovery . . . . [A] district court may refuse to grant a discovery request, or may impose various conditions and protective orders attendant to the production of requested documents." Id.

If the statutory requirements of Section 1782 are met, the district court is not required to allow the discovery, but has the *discretion* to do so. The Supreme Court has identified four factors that are relevant to this discretionary decision:

> **[1]** Whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid;
>
> **[2]** The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;
>
> **[3]** Whether the § 1782 request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States;
>
> **[4]** Whether the subpoena contains unduly intrusive or burdensome requests.

Intel, 542 U.S. at 264-65 (emphases added).

Finally, Congress specifically intended Section 1782 to be interpreted liberally, and the party opposing a Section 1782 application has the burden to show why the discovery is improper. See In re Bayer AG, 146 F.3d 188, 196 (3d Cir. 1988) ("Consistent with the statute's modest prima facie elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to Section 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application.").

Only the discretionary *Intel* factors are discussed in the briefs. The first *Intel* factor is not in dispute; the remaining three are.

**B.     Second *Intel* Factor**

The second *Intel* factor focuses on the nature of the foreign tribunal and its receptivity to judicial assistance from United States Courts. Intel, 542 U.S. at 264. This factor is effectively broken down into two distinct parts which the case law sometimes blends together: the statutory requirement that the discovery be sought "for use" in a foreign proceeding; and the *discretionary* evaluation of whether such discovery is appropriate under the circumstances.

As a matter of statutory construction, the question is straightforward. When assessing whether the material is being sought "for use" in a foreign proceeding, courts should not consider whether the Section 1782 application seeks information that would be discoverable or admissible in the foreign forum. See, e.g., Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 82 (2d Cir. 2012) ("Accordingly, as a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a Section 1782 application."). Indeed, the Supreme Court and the Third Circuit have made clear that there is no "foreign-discoverability" statutory prerequisite to a Section 1782 application. Intel, 542 U.S. at 259-64; John Deere v. Sperry Corp., 754 F.2d 132, 138 (3d Cir. 1985) ("a district court is not to predict the admissibility of discovered evidence in foreign tribunals").

In this District, Third Circuit Judge Greenaway (then a District Judge) articulated the relevant statutory inquiry under Section 1782: "*it is sufficient that the applicant intend to offer the evidence to a foreign court.*" In re Imanagement Servs. Ltd., 2006 WL 547949, at *3 (D.N.J. Mar. 3, 2006) (emphasis added). Similar language is found in the Third Circuit's John Deere

5

decision: "As long as the discovered information is intended for use in a foreign proceeding that comports with the notions of due process, the requirements of Section 1782 are met and an appropriate order should issue."  754 F.2d at 138.  Since O'Keeffe intends to offer the evidence sought through her application in the Hong Kong proceedings, it is clear that the *statutory* requirements of Section 1782—the "for use" requirement—is satisfied.

Nevertheless, Movants contend the second *Intel* factor is not satisfied because the Court should exercise its discretion and not authorize the subpoena because of substantive and procedural questions raised under Hong Kong law.  When making this discretionary evaluation, "the district court would be free, in the exercise of its discretion, to consider any materials, typically statutes or case law from the foreign jurisdiction that may be presented by the parties."  In re Bayer AG, 146 F.3d at 196.  If the Court is inclined to consider such information, the general view is that the second *Intel* factor weighs against discovery only where there is "authoritative proof" that the foreign court would reject the evidence.  Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995) ("We believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence in aid of Section 1782 . . . [A]bsent this type of clear directive, however, a district court's ruling should be informed by Section 1782's overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants involved with international aspects.").

Here, there is no "authoritative proof" submitted that the Hong Kong court would reject the evidence.  The parties each submitted a declaration from an expert on Hong Kong law.  Movants' expert is Malcom Bernard Kemp, a Hong Kong-based solicitor and partner in the law firm of Stephenson Harwood.  O'Keeffe's expert is Kathyrn Sara Hippolyte Sanger, a Hong

6

Kong-based expert consultant for the Clifford Chance law firm. These declarations extensively discuss foreign law. However, they say diametrically different things about the same issues.[3]

The experts' competing opinions on Hong Kong law are summarized below. But the reality is, this discussion is for the purpose of informing a *discretionary* decision to allow Section 1782 discovery. And the mere existence of diametrically different expert testimony makes it impossible for the Court to conclude that "authoritative proof" exists that the discovery O'Keeffe seeks is inappropriate under Hong Kong law. It also becomes an exercise in analyzing complex and ambiguous aspects of foreign law and deciding what might be admissible in a Hong Kong court, something that courts have repeatedly found inappropriate.

Movants' expert, Mr. Kemp, opines as follows:

- O'Keeffe's application is "premature," because the pleadings have not yet closed. (Kemp Decl., ¶ 51);

- Evidence is limited to that expressly detailed in the pleadings, and since the pleadings aren't closed, those parameters aren't set yet. (Kemp Decl., ¶ 52);

- O'Keeffe's application seeks information not pleaded in the "Amended Defence" and therefore will be inadmissible. (Kemp Decl., ¶ 56);

- Order 39, which governs depositions in Hong Kong, would not allow for Mr. Thorell's deposition unless he was mentioned in the amended defense or unless it can be shown his testimony is relevant to the pleadings. (Kemp Decl., ¶ 56);

- Order 39 requires the appointment of an examiner to take a deposition in Hong Kong, and no such protection is present here. (Kemp Decl., ¶ 58);

- O'Keeffe has circumvented Hong Kong law by choosing to proceed with a Section 1782 application and not through Order 39. (Kemp Decl., ¶ 60);

---

[3] The declarations are also not broken down by *Intel* factors, and thus some of their opinions relate to both this and the third *Intel* factor (*see, infra*).

7

- A House of Lords opinion relied on by O'Keeffe that supports use of Section 1782 in Hong Kong—*South Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V.*, [1987] 1 App. Cas. 24 (1986)—was issued at a time when third party discovery procedures were not available under Hong Kong law, but that Hong Kong law has changed, and therefore, O'Keeffe should have resorted to Hong Kong law first. (Kemp Decl., ¶ 71.)

O'Keeffe's expert, Ms. Sanger, opines as follows:

- The pleadings have closed since the application was filed, thus, the application is not premature. (Sanger Supp. Decl., ¶¶ 14-16);

- The pleadings do not need to mention Mr. Thorell, so long as he can provide relevant information to something that is in the pleadings. (Sanger Supp. Decl., ¶¶ 19-22);

- Order 39 does not require an examiner under these facts. (Sanger Supp. Decl., ¶ 30);

- Order 24 provides Hong Kong courts with wide discretion to order general discovery. (Sanger Supp. Decl., ¶ 35);

- Persuasive authority from the House of Lords (*South Carolina Insurance Co.* case) is on point. Although no longer binding after Hong Kong's return to China in 1997, it remains persuasive authority. (Sanger Supp. Decl., ¶¶ 18-20);

- There is no obligation whatsoever to pursue discovery through the Hong Kong Orders. (Sanger Decl., ¶¶ 4-6).

The above recitation establishes that there is genuine disagreement about what evidence would be admissible in the Hong Kong proceedings. This Court is not in a position to conclusively resolve competing interpretations of Hong Kong law. Nothing in any of the declarations constitutes "authoritative proof" that the evidence would not be welcome in Hong Kong, and therefore, nothing in the declarations or briefs persuades the Court <u>not</u> to exercise its discretion to allow the subpoenas. Indeed, the Court is mindful of Judge Greenaway's caution

about wading too deeply into thorny questions of foreign law:

> In *Intel,* the Court stated that § 1782 determinations should not be restricted by foreign discovery rules. Rather, the Supreme Court's analysis supports the proposition that United States courts should have the discretion to offer discovery assistance to foreign tribunals independent of the laws of the foreign state. The Court warned against interpreting § 1782 so as to require United States courts to analyze foreign legal rules and systems: "comparison of systems is slippery business." [Movant's] position would both draw this Court into a difficult investigation of a foreign legal system and bind it with the restrictions of foreign discovery rules.

2006 WL 547949, at *3.[4]

C. **Third *Intel* Factor**

The third *Intel* factor is "whether the request is an attempt to circumvent proof-gathering limitations." Intel, 542 U.S. at 264. Movants claim that this factor weighs strongly in favor of denying the Section 1782 application. Movants' position is essentially that there is no explanation for why O'Keeffe declined to seek the assistance of the Hong Kong courts before pursuing Section 1782 relief. Indeed, much of Mr. Kemp's declaration is focused on what discovery could be available to O'Keeffe in Hong Kong and how pursuing discovery through Section 1782 is curious under these circumstances. Movants contend that an inference of circumvention should be drawn against O'Keeffe because she allegedly made no effort to obtain discovery through Hong Kong procedures first. The Court disagrees.

**First**, the law is clear that there is no requirement that a foreign litigant first attempt to obtain discovery through the foreign forum before resorting to Section 1782 – that is, no foreign "quasi-exhaustion" requirement. See, e.g., In re Bayer AG, 146 F.3d at 195-96 ("a quasi-

---

[4] It is worth noting that Section 1782 has been applied to authorize discovery, including depositions, for matters pending in Hong Kong courts. See, e.g., In re Application of Esses, 101 F.3d 873 (2d Cir. 1996); In re Mack, 2012 WL 2906761, at *1 (N.D. Cal. July 16, 2012).

9

exhaustion requirement . . . has been rejected by those courts that have addressed it.").

**Second**, there is no requirement that an applicant show that the information would be discoverable in the foreign proceeding or that it would be admissible. See, e.g., John Deere, 754 F.2d at 136 ("We do not believe that Congress intended litigants interested in foreign proceedings to resort to Section 1782 only upon an adequate showing that they could obtain letters rogatory from the foreign forum. Such a reading would virtually nullify the statutory provision that interested persons may apply for discovery orders.").

**Third**, the cases Movants cite as examples of attempts to "circumvent" foreign forums are highly distinguishable and often involve efforts to engage in Section 1782 proceedings *after* a foreign forum has already disallowed the evidence or other suspicious circumstances arise. See, e.g., In re OOO Promnesfstroy, 2009 WL 3335608, at *8-9 (S.D.N.Y. Oct. 15, 2009) (applicant tried and failed to get same documents in foreign forum); In re IPC Do Nordeste, 2012 WL 4448886 (E.D. Mich. Sept. 25, 2012) (applicant was Brazilian but sought to use Section 1782 to gain access to documents in Brazil for use in Brazil); Advanced Micro Devices v. Intel Corp., 2004 WL 2282320 (N.D. Cal. Oct. 4, 2004) (denying petition when foreign forum submitted affidavit stating they did not want the evidence).

Here, O'Keeffe has simply invoked procedures available to her under the law. She is a United States citizen invoking her rights under United States law. The Court draws no negative inference from her decision to resort to Section 1782. Cf. Euromepa, 51 F.3d at 1098; Weber v. Finker, 2007 WL 4285362, at *7 (S.D. Fla. Nov. 30, 2007) (rejecting notion that invoking § 1782 creates an "inference" of circumvention). This is regardless of whatever strategic maneuvering one could imagine. At bottom, the type of inference requested would really be nothing more than a *de facto* exhaustion requirement. O'Keeffe's decision to invoke United

10

States law deserves no more of an inference than Mr. Adelson's choice of forum.  That is, no inference is drawn either way.  Movants have not established that there is a strong basis to find circumvention of a foreign forum.

**D.** **Fourth *Intel* Factor**

The final *Intel* factor is whether the application contains unduly burdensome or intrusive requests.  Movants contend the application is both; it is allegedly a "fishing expedition" because O'Keeffe has no basis to believe Mr. Thorell has any information other than a prior *WSJ* report, and intrusive because it seeks confidential auditor-client communications.

The request is not burdensome.  O'Keeffe claims that Thorell and PwC terminated their relationship with Mr. Adelson based on personal difficulties.  While Movants refer to the discovery requests as a fishing expedition, it seems clear that the discovery sought could bear on the question of whether Mr. Adelson is "foul-mouthed" for purposes of the Hong Kong lawsuit.  In other words, at least under the Federal Rules of Civil Procedure, if the information sought exists, and is within Mr. Thorell's possession, it would be relevant.  See Fed. R. Civ. P. 26(b).  Moreover, any burden would fall on the subpoenaed parties, who have not sought to quash the subpoenas.

The requests are also not overly intrusive.  Movants contend that the information is confidential and that PwC has an obligation to treat it as such, citing to certain case law and the American Institute of Certified Public Accountants' Code of Professional Conduct.  It is true that auditor-client communications are confidential.  But they are not privileged.  See, e.g., Couch v. United States, 409 U.S. 322, 344 (1973) ("no confidential accountant-client privilege exists under federal law"); United States v. Antolini, 271 Fed. Appx. 268, 271 n.1 (3d Cir. 2008).  Confidentiality concerns can be easily dealt with through redaction and other measures short of

quashing the subpoena.  Moreover, as O'Keeffe notes, the types of communications sought in the application (essentially, use of slang and offensive language) might not be covered by any confidentiality obligations.  O'Keeffe also agrees to the redaction of anything in relevant documents that is not responsive to the subpoena.  The Court agrees that redaction of any information outside the scope of the subpoena is appropriate and will be required.  However, for purposes of the fourth *Intel* factor, the discovery sought is neither burdensome nor intrusive.

## CONCLUSION

For the above reasons, Movants' motion to quash [ECF No. 17] is **DENIED**.


s/Mark Falk_____
**MARK FALK**
**United States Magistrate Judge**


**DATED:  February 10, 2015**